**DEERE CONSTRUCTION, LLC, Plaintiff,**

v.

**CEMEX CONSTRUCTION MATERIALS FLORIDA, LLC; and Cemex, Inc., Defendants.**

**CASE NO. 15-24375-CIV-ALTONAGA/O'Sullivan**

United States District Court, S.D. Florida.

Signed July 26, 2016

Adam M. Moskowitz, Javier Asis Lopez, Harley Shepard Tropin, Kozyak Tropin & Throckmorton, Coral Gables, FL, Howard Mitchell Bushman, Lance August Harke, Harke Clasby & Bushman LLP, Miami Shores, FL, James Matthew Stephens, McCallum Methvin and Terrell PC, Birmingham, AL, Tal J. Lifshitz, Kozyak Tropin Throckmorton, Miami, FL, for Plaintiff.

Janelle M. Ans, Jeffrey Todd Foreman, Michael Nachwalter, Kenny Nachwalter, P.A., Miami, FL, John A. DeVault, III, Patrick Power Coll, Bedell Dittmar DeVault Pillans & Coxe, Jacksonville, FL, for Defendants.

## ORDER

CECILIA M. ALTONAGA, UNITED STATES DISTRICT JUDGE

**THIS CAUSE** came before the Court on Defendants, Cemex Construction Materials Florida, LLC ("Cemex Construction"), and Cemex, Inc.'s ("Cemex['s]") (collectively "Defendants[']") Motion to Dismiss Amended Class Action Complaint . . . ("Motion") [ECF No. 58], filed June 20, 2016.[1] Defendants seek to dismiss the Amended Class Action Complaint ("Amended Complaint") [ECF No. 49] pursuant to Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim for relief. The Court has carefully reviewed the Amended Complaint; the Motion; Plaintiff, Deere Construction, LLC's ("Deere['s]") Response . . . ("Response") [ECF No. 64]; Defendants' Reply . . . ("Reply") [ECF No. 70]; and applicable law. For the reasons explained below, the Motion is denied.

## I. BACKGROUND[2]

The Amended Complaint states two claims for relief: the first is brought

---

1. The parties' memoranda are for the most part repetitive of the written submissions made with regard to Defendants' Motion to Dismiss Class Action Complaint ("first motion to dismiss") [ECF No. 11], that resulted in an order dismissing the original Complaint with leave to amend. *See Deere Constr., LLC v. Cemex Constr.Materials Florida, LLC,* No. 15–

24375–CIV–KING, 2016 WL 2770537 (S.D.Fla. May 12, 2016) (hereinafter *"Deere I"*).

2. On a motion to dismiss for failure to state a claim for relief under Federal Rule of Civil Procedure 12(b)(6), the allegations of the Amended Complaint are accepted as true.

against both Defendants under the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Florida Statutes section 501.201–501.2101 (First and Second Causes of Action);[3] and the second is for breach of contract (Third Cause of Action) against Cemex Construction. (*See* Am. Compl. 18–27). Deere does business in Miami-Dade County and received and paid multiple invoices from Defendants for cement and concrete, including invoices dated December 19, 2011, February 2, 2012, and March 13, 2012. (*See id.* ¶¶ 2, 15). Defendants collectively are a global building material company whose customers enter into "uniform and effectively identical" written service agreements. (*Id.* ¶¶ 1–2). Plaintiff's contract, attached as Exhibit A to the Amended Complaint, was with Rinker Materials of Florida, Inc., which converted to Cemex Construction in 2008. (*See id.* 2 n.1).

The contracts provide an agreed upon rate for cement and concrete, but in addition, Defendants charge their Florida customers two additional fees: a "fuel surcharge" and an "environmental charge" (hereinafter sometimes referred to collectively as "fees"). (*See id.* ¶¶ 2, 3). Defendants' naming of the fees is not accidental: Defendants chose the terms intentionally to create the false impression the fees are legitimate charges directly related to specific costs Defendants incur in providing their services. (*See id.* ¶ 4). Defendants use these uniform terms on each invoice they send their customers charging these fees, including the three referenced invoices paid by Deere. (*See id.* ¶¶ 4, 15). "Fuel surcharge" bears no relation to any actual or increased fuel costs Defendants incur; if it did, the precipitous drop in fuel prices the last four years would have resulted in a corresponding drop in Defendants' fuel surcharges. (*See id.* ¶ 5). The "environmental charge" does not correspond with or offset any actual or increased environmental costs either. (*See id.* ¶ 6).

Instead, these charges are used to generate extra profit at the expense of customers, who are deceived into believing the fees are legitimate charges directly related to Defendants' actual or increased fuel and environmental costs. (*See id.* ¶ 7). The fees are nothing but profit-enhancers disguised as fees that have a legitimate purpose, constituting a violation of the FDUTPA. (*See id.* ¶ 8). Defendants' representations, omissions, and practices in charging these fees are deceptive and unfair. (*See id.* ¶ 7).

The "Standard Terms and Conditions" of the agreement between Deere and Cemex Construction states: "Seller reserves the right to charge a fuel surcharge, raw materials surcharge or other surcharges that may apply. Any fuel surcharge will be calculated from the Federal Energy Information Administration's weekly reporting of diesel fuel pricing for the respective operating region." (*Id.*, Ex. A ¶ 11)). Defendants[4] breached their contract with Deere by charging it and members of the putative class fees that are not calculated pursuant to the Federal Energy Information Administration's ("EIA['s]") weekly reporting of diesel fuel pricing for the

---

**3.** The First and Second Causes of Action are in truth but one claim. The First seeks money damages for violations of the FDUTPA; the Second seeks injunctive relief for violations of the FDUTPA. *See Vargas v. Wells Fargo Bank, N.A.*, No. C 12–02008 WHA, 2012 WL 2931220, at *6 (N.D.Cal. July 18, 2012) ("Although plaintiffs designate their prayer for injunctive and declaratory relief as a *claim*,

injunctive and declaratory relief are actually *remedies.*" (emphasis in original)).

**4.** It is not clear why Plaintiff references both Defendants in its discussion of the breach when the contract is between Plaintiff and Cemex Construction, and the breach of contract count seeks damages only from Cemex Construction.

respective operating region and that are unrelated to Defendants' actual or increased fuel and environmental costs. (*See id.* ¶ 9). Further, the "environmental charge" is not disclosed or identified anywhere in the Deere-Cemex Construction contract. (*See id.* ¶ 25).

By using the term "fuel surcharge" in every invoice received by class members charged this fee, Defendants have deceived Deere and members of the putative class into believing the fee is calculated using Defendants' actual or increased fuel costs and that the fee will be used to defray such costs. (*See id.* ¶ 27). Defendants also falsely represent the "environmental charge" is directly related to their actual or increased environmental costs, particularly environmental compliance costs, and that the fee is used to offset these costs. (*See id.* ¶¶ 35, 38–40). Indeed, a Cemex United Kingdom website describes the "fuel surcharge" and "environmental fees" as "cost recovery charges." (*Id.* ¶ 29 & n.3). A Cemex website states "we have introduced an Environmental Charge to enable customers to see the environmental taxes and levies to which the readymix concrete industry is subject. The Environmental Charge is applied to recover these costs imposed by government and regulators." (*Id.* ¶ 37). Defendants' misrepresentations and omissions, combined with described deceptive and unfair practices, did in fact deceive Plaintiff and other Florida customers to their detriment, in that each paid "fuel surcharges" and "environmental charges." (*See id.* ¶ 46).

Plaintiff alleges two proposed classes, a FDUTPA class and a breach of contract class. (*See* ¶¶ 48, 49). On its FDUTPA claim, Plaintiff seeks the repayment of all money paid for fuel surcharges and environmental charges plus interest, an order enjoining Defendants' conduct, and attorney's fees. (*See id.* 23, 25). On its breach of contract claim against Cemex Construc-

tion, Plaintiff seeks as compensatory damages an amount equal to the improper and excessive fees paid to Defendant. (*See id.* 27). Defendants move to dismiss the Amended Complaint for failure to state claims for relief.

## II. STANDARD

"To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (alteration added; quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). Although this pleading standard "does not require 'detailed factual allegations,' ... it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Id.* (alteration added; quoting *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955). Pleadings must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955 (citation omitted). Indeed, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679, 129 S.Ct. 1937 (citing *Twombly*, 550 U.S. at 556, 127 S.Ct. 1955). To meet this "plausibility standard," a plaintiff must "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678, 129 S.Ct. 1937 (alteration added; citing *Twombly*, 550 U.S. at 556, 127 S.Ct. 1955). "The mere possibility the defendant acted unlawfully is insufficient to survive a motion to dismiss." *Sinaltrainal v. Coca–Cola Co.*, 578 F.3d 1252, 1261 (11th Cir.2009) (citing *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937), *abrogated on other grounds by Mohamad v. Palestinian Auth.*, 566 U.S. 449, 132 S.Ct. 1702, 182 L.Ed.2d 720 (2012).

## III. DISCUSSION

Defendants raise several arguments in support of their Motion. First, Defendants argue the Amended Complaint does not state a claim for violation of the FDUTPA, as: (a) the terms "fuel surcharge" and "environmental charge" are not deceptive; and (b) Plaintiff fails to plead reasonable reliance. (*See* Mot. 6–12). Second, Defendants argue Plaintiff fails to allege the threshold requirements for standing. (*See id.* 12–14). Third, Defendants argue the express terms of the contract's standard terms and conditions bar the breach of contract claim. (*See id.* 14–16). Fourth, Defendants argue the voluntary payment doctrine bars Plaintiff's claims. (*See id.* 16–17). Last, according to Defendants, the allegations are conclusory and fail to satisfy Federal Rule of Civil Procedure 8(a); and as to the FDUTPA claim, Rule 9. (*See id.* 17–20). The Court addresses each argument in turn.

### A. The FDUTPA Claim

Defendants argue, much as they did in their first motion to dismiss, that Plaintiff's FDUTPA claim must be dismissed, with prejudice (*see id.* 21), because the terms "fuel surcharge" and "environmental charge" are not deceptive, those terms are disclosed in Plaintiff's agreement and invoices, and Plaintiff fails to identify any statements or representations by Defendants as to how the fees would be calculated that could support a charge of deception or falsity. (*See id.* 6–11). This is Defendants' principal argument in the Motion. Defendants chiefly rely on *Deere I*; *Berry v. Budget Rent A Car Sys., Inc.*, 497 F.Supp.2d 1361 (S.D.Fla.2007); and *Braswell Wood Co., Inc. v. Waste Away*

*Grp., Inc.*, No. 2:09–CV–891–WKW [WO], 2010 WL 3168125 (M.D.Ala. Aug. 10, 2010). (*See id.*). Defendants' erroneous reading of the Amended Complaint and failure to see the distinctions between this case and *Berry* doom its principal argument.

As explained by Plaintiff in its Response, the Amended Complaint alleges the "fuel surcharge" is not calculated from the EIA weekly reporting of diesel fuel as is represented in the contract's Terms and Conditions, and in fact, no calculation whatsoever is performed to arrive at the fuel surcharge amount;[5] the "environmental charge" is not charged to recover environmental compliance costs; a reasonable consumer would be deceived by use of the challenged terms, including by representations found on Defendants' affiliated websites; and the fees are deceptive as Defendants were already recovering fuel and environmental costs in the base rate they charge their customers. (*See* Resp. 4).

▮▮▮ "The FDUTPA is designed '[t]o protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce.'" *Kenneth F. Hackett & Assocs., Inc. v. GE Capital Info. Tech. Sols., Inc.*, 744 F.Supp.2d 1305, 1312 (S.D.Fla. 2010) (alteration in original; quoting Fla. Stat. § 501.202(2)). To state a FDUTPA claim, a plaintiff must allege three basic elements: (1) a deceptive act or unfair practice; (2) causation; and (3) actual damages. *See Galstaldi v. Sunvest Cmtys. USA, LLC*, 637 F.Supp.2d 1045, 1056 (S.D.Fla.2009) (citing *Rollins v. Butland*,

---

**5.** Defendants' contention Plaintiff improperly references practices by Cemex Construction in calculating the fuel "surcharge" after Plaintiff stopped being a customer in March 2012 falls short of showing the FDUTPA claim fails. (*See* Reply 3). The pleading's references to websites that post-date 2012 appear to be examples of improper practices that predate the information contained therein.

951 So.2d 860, 869 (Fla. 2d DCA 2006)). A deceptive act or practice is one likely to mislead the consumer acting reasonably under the circumstances, to the consumer's detriment. *See Kenneth F. Hackett & Assocs., Inc.*, 744 F.Supp.2d at 1312 (citations omitted). An unfair practice offends established public policy; it is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers. *See id.* (citations omitted).

■ With regard to the claimed deceptive act or unfair practice, the Amended Complaint makes abundantly clear Plaintiff's claim is not that it did not know about the "fuel surcharge" and "environmental charge." Those fees are undoubtedly disclosed in the agreement and Defendants' invoices. What is allegedly deceptive is that the so-called "fuel surcharges" and "environmental charges," labeled as such by Defendants, were not in fact designed to cover anything related to fuel or the environment. Defendants chose the two adjectives that describe the fees being assessed. Each adjective carries meaning. But the messages, according to Plaintiff, are deceptive. Plaintiff's contention is it did not know the fees were illegitimate mechanisms designed merely to contribute to Defendants' profits rather than address any costs Defendants were incurring with regard to activities falling under the descriptive terms "fuel" or "environmental."

*Latman v. Costa Cruise Lines, N.V.*, 758 So.2d 699 (Fla. 3d DCA 2000), noted by the court in *Deere I* as a possible basis for Plaintiff to be able to plead a FDUTPA claim so long as it supplemented its pleading with additional facts, *see Deere I*, 2016 WL 2770537, at *3, squarely supports the FDUTPA claim Plaintiff makes here. In *Latman*, the court found a FDUTPA plaintiff class should have been certified where the plaintiff-cruise ship passengers alleged the defendant cruise lines assessed so-called "port charges" to cover charges presumably paid by the cruise line to the relevant port authorities, when in truth the cruise lines passed through only a portion of those charges to third parties, keeping the remainder to themselves. *See* 758 So.2d at 701. Defendants argued absent an indication that consumers were influenced in some way by the "port charges," there was neither reliance nor resulting damage under the FDUTPA. *See id.* at 702–03. The court in *Latman* rejected defendants' contention reliance and resulting damages would involve a case-by-case inquiry not suitable for class treatment, stating:

> For purposes of FDUTPA, we think the inquiry is how a reasonable consumer would interpret the term "port charges." The term necessarily constitutes a representation to a reasonable consumer that these are "pass-through" charges which the cruise line will pay to the relevant port authorities (and possibly others).
>
> . . .
>
> We therefore conclude that where the cruise line bills the passenger for port charges but keeps part of the money for itself, that is a deceptive practice under FUDTPA. Reliance and damages are sufficiently shown by the fact that the passenger parted with money for what should have been a "pass-through" port charge, but the cruise line kept the money.

*Id.* at 703 (footnote call number omitted; alterations added).

Similarly, in *In re NationsRent Rental Fee Litig.*, No. 06–60924–CIV, 2009 WL 636188, at *2, 11 (S.D.Fla. Feb. 24, 2009), the court certified a class of persons and businesses that rented equipment from the defendant-companies and paid an environmental charge. The court addressed defendants' arguments commonality and typicality could not be shown as to this charge because some customers were informed of

the types of "environmentally-friendly" uses for the charge by salespersons or brochures. *See id.* at \*8. The court rejected those arguments given extra-contractual representations were irrelevant to the adhesion contract at issue. *See id.* Notably, the court found the term "environmental charge" "implies that Defendants will use the money to defray environmental expenditures, and Plaintiffs allege that they do not do so." *Id.* at \*9 (footnote call number omitted).

In *Berry*, the court considered the sufficiency of a claim that Budget Rent A Car System's practice of adding an additional cost recovery fee ("CRF") of $3.00 to the daily rental rate charged to customers violated the FDUTPA and other consumer fraud laws because the CRF is a hidden profit center for Budget rather than a legitimate means of recouping the cost of licensing and registering its fleet of vehicles, as the amount of the fee grossly exceeded the actual cost of vehicle registration and licensing. *See* 497 F.Supp.2d at 1363–64. The plaintiffs made no allegations the CRF was anything analogous to a pass-through charge, like the port fee in *Latman* or a sales tax. *See id.* at 1367. The court found the term "cost recovery fee" implied the company would keep the money collected as "recovery" for its costs. *See id.* Of significance to the analysis here, the *Berry* court noted, "in *Latman*, it was not the excess amount of the fee that was deceptive, but rather the fact that the company charged what appeared to be a pass-through fee for a third-party but retained a portion for itself. *No such allegations have been made in this case.*" *Id.* (emphasis added; footnote call number omitted). Indeed, in *Berry* no allegations were made concerning any advertisements or descriptions of the CRF's purpose that the plaintiffs relied on. *See id.* at 1368.

The court's dismissal of the complaint in *Berry* does not aid Defendants here. Un-

like *Berry*, but similar to the plaintiffs in *Latman*, Deere does not allege it is the excess amount of the fees that is deceptive. Deere precisely alleges it is the fact Defendants charge what appear to be fees related to fuel and environmental costs, but instead retain those amounts for themselves. There is nothing in the terms "fuel surcharge" or "environmental charge" that implies Defendants will keep the monies collected. *See, e.g., Dover v. British Airways, PPLC (UK)*, No. 12 CV 5567(RJD)(MDG), 2013 WL 5970688, at \*4 (E.D.N.Y. Nov. 8, 2013) ("The plain meaning of the term 'fuel surcharge' is a supplemental charge that is reasonably related to or based upon the cost or price of fuel. This understanding comports with conventional usage."). This is wholly unlike the "cost recovery fee" in *Berry* that implies a company is keeping the money collected as "recovery" for its costs. The Court will not require Plaintiff to identify any statements or representations by Defendants as to how the fees would be calculated in order to state a claim of deception or falsity; Defendants chose the descriptive terms and if they do not accurately describe what is being charged and collected, such conduct is actionable under the FDUTPA.

Finally, that the terms are disclosed in the agreements and invoices does not defeat the sufficiency of the FDUTPA claim. Had the terms been disclosed and their purpose and intent accurately described in the agreements and invoices, the Court could see how a claim predicated on deception and falsity would fail. (*See, e.g.*, Resp. 9 ("[U]nlike many of the class members in both *Latman* and *Berry*, Plaintiff was not fully informed of the exact costs at the outset and could not consider whether such fees were fair." (alteration added)). But Defendants' documentation does not advise the purchaser the charges have nothing to do with fuel or environmental costs, and instead are ways for Defendants

to increase their profit from the transaction, as is alleged by Plaintiff and accepted as true.

*Morris v. ADT Security Services*, 580 F.Supp.2d 1305 (S.D.Fla.2008), considered a similar argument by defendant in support of a requested dismissal of the complaint. Like Defendants here, in *Morris* ADT Security Services relied on *Berry* to support its assertion the parties' contract, which provided plaintiff would bear the risk of certain occurrences, required dismissal of the FDUTPA claim. *See id.* at 1311. The district court found reliance on *Berry* and other cases "misplaced." *Id.* In so stating, the court explained it was "not prepared at this juncture to find that Plaintiffs may not later properly claim that the contracts ADT rely upon are void as having been procured through the deceptive and unfair trade practices of ADT." *Id.*

The Amended Complaint properly states a claim for relief under the FDUTPA.[6]

## B. Standing

Defendants argue Plaintiff fails to allege the threshold requirements for standing because it cannot establish any causal connection between the alleged conduct—Defendants making misleading representations about fuel and environmental

charges—and injury. (*See* Mot. 13–14). This argument lacks merit.

"To have standing, a plaintiff must establish (1) an injury in fact, which is concrete and particularized ...; (2) a causal connection between the injury and the causal conduct; and (3) a substantial likelihood that a favorable decision will redress the injury." *Amnesty Inter., USA v. Battle*, 559 F.3d 1170, 1177 (11th Cir. 2009) (alteration added; citations omitted). Plaintiff clearly alleges an injury in fact: the payment of fees it seeks to recover with its prayer for the repayment of the fees plus interest. Plaintiff has also clearly demonstrated the causal connection between Defendants' misrepresentations and Plaintiff's loss: Plaintiff and the putative class members have been aggrieved by Defendants' unfair and deceptive practices by submitting payments for what they believed were charges associated with fuel and environmental costs, when in fact those charges were merely ways for Defendants to make additional profit. Finally, a favorable decision on the claim will redress the injury to the extent Plaintiff recovers the monies it paid on the basis of deceptive representations and omissions. Plaintiff satisfies the requirements for threshold standing under Article III.

---

**6.** As additional support for dismissal of the FDUTPA claim, Defendants rely on *Braswell Wood Co.*, 2010 WL 3168125; and Federal Trade Commission ("FTC") pronouncements and consent orders. (*See* Mot. 8–10). Neither persuades.

In *Braswell*, the district court rejected RICO, misrepresentation, and fraud claims premised on the charging of fees titled "fuel surcharge" and "environmental charge" as constituting misrepresentations where the charges did not correspond to the defendants' increased costs. 2010 WL 3168125, at *4–5. The court noted the contract provided for the charges. *See id.* at *4. Yet, it acknowledged if "a customer had demanded an explanation of

the charges and WM had responded with false assertions about the costs of fuel it had incurred, that would be closer to a cognizable misrepresentation." *Id.* The scenario noted by *Braswell* as "closer to a cognizable misrepresentation" is the one Plaintiff makes here.

A recent settlement of FTC charges by Budget-Rent-A-Car, cited by Defendants (*see* Mot. 10), involved the rental car company failing to adequately inform customers about an option of presenting a gas receipt to obtain a refund of a fuel fee, and being required to clearly and conspicuously disclose the option in the future. (*See* Resp. 12). The Court fails to see how this settlement supports dismissal of the FDUTPA claim.

## C. The Breach of Contract Claim Against Cemex Construction

Given the Deere-Cemex Construction agreement prohibits reliance on representations that contradict its terms, Cemex Construction maintains the breach of contract claim fails because Deere cannot have relied on any representation regarding the calculation of the fees that contradicts or varies the terms of the agreement. (*See* Mot. 14 (citing cases)). Similarly, Cemex Construction asserts the allegation it breached the agreement because it did not perform any calculation before determining the amount of the fees also contradicts the agreement. (*See id.* 15). According to Cemex Construction, it did *in fact* calculate the fuel surcharge based on the FEIA's reporting of diesel fuel pricing for the respective operating region, as the parties' agreement provides.[7] (*See id.*). Cemex Construction asserts Deere's allegation Defendant did not perform a per-gallon calculation fails as the agreement contains no obligation to do so. (*See id.*). Last, Defendant asserts the breach of contract claim fails because the invoices incorporate the agreement's Standard Terms and Conditions, and they reflect the fees charged. (*See id.* 16).

■ It is certainly true, as Cemex Construction argues, a "party cannot recover in fraud for alleged oral misrepresentations that are adequately covered and expressly contradicted in a later written contract." *Hillcrest Pacific Corp. v. Yamamura,* 727 So.2d 1053, 1056 (Fla. 4th DCA 1999); *see also Rosa v. Amoco Oil Co.,* 262 F.Supp.2d 1364, 1366 (S.D.Fla. 2003) (stating "statements or misrepresentations made to induce an individual to enter a contract, if later contained within the terms of the actual contract, cannot

constitute a basis on which to bring a fraud claim"). But Plaintiff is not advancing a fraud claim.

■ To state a breach of contract claim, a plaintiff must allege: "(1) a valid contract; (2) a material breach; and (3) damages." *Beck v. Lazard Freres & Co., LLC,* 175 F.3d 913, 914 (11th Cir.1999) (citing *Abruzzo v. Haller,* 603 So.2d 1338, 1340 (Fla. 1st DCA 1992)). Deere sufficiently alleges the existence of a contract between it and Cemex Construction, as well as damages, as noted *supra.*

■ The real question, then, is whether it alleges a material breach. According to Deere, Cemex Construction breached the written service agreement by charging and collecting improper "fuel surcharges" and "environmental charges," in that: the contract represented Defendant would perform a calculation to arrive at its fuel surcharge amount; the fuel surcharge would be calculated from the EIA's weekly reporting of diesel fuel pricing for the respective operating region; but Defendant did not in fact perform any calculation to arrive at the fuel surcharge amount, let alone perform a calculation from the EIA's weekly diesel fuel price. (*See* Am. Compl. ¶ 79). The EIA reports the price of diesel fuel by the gallon; but as the invoices demonstrate, Cemex Construction charges the same fuel surcharge amount no matter how many gallons of fuel it uses to service its customers, or the location of such service. (*See id.*). Furthermore, the "environmental charge" is not referred to anywhere in the contract, and Deere did not agree or contract to pay such a fee, which is unrelated to Defendant's actual or increased environmental costs. (*See id.* ¶ 80). As explained by Deere, it is not relying on

---

7. Cemex Construction fails to point to any allegation or supporting documentation attached to the Amended Complaint that provides this "fact." As Cemex Construction knows, on a Rule 12(b)(6) motion the Court is limited to reviewing the well-pled allegations (including necessary exhibits) and accepting them as true.

any misrepresentation outside the contract, which is the premise of the invalid fraud claims addressed in the cases Defendant cites. (*See* Resp. 17–18).

Defendant fails to show dismissal of the breach of contract claim is warranted.

## D. Voluntary Payment Doctrine

Defendants next argue the voluntary payment doctrine bars Plaintiff's claims. (*See* Mot. 16–17). But the very cases Defendants rely on to make their argument shows the weakness of their position in advancing this argument. According to Defendants, "Florida recognizes the rule that money voluntarily paid under a claim of right to the payment, ***and with knowledge of the facts*** by the person making the payment, cannot be recovered back [sic]." (*Id.* 16 (emphasis added; citations omitted). Defendants insist the doctrine may be used to dismiss a claim where the complaint discloses knowledge and payment by the plaintiff. (*See* Reply 9).

 As correctly observed by Plaintiff, the voluntary payment doctrine is an affirmative defense that may not be raised on a motion to dismiss, as it entails a fact-based inquiry not suited for resolution on a Rule 12(b)(6) motion. (*See* Resp. 18–19 (citing, *e.g.*, *Carrero v. LVNV Funding, LLC*, No. 11–62439–CIV, 2014 WL 6433214, at *6 (S.D.Fla. Oct. 27, 2014); *Schojan v. Papa John's Int'l Inc.*, 34 F.Supp.3d 1206, 1210–11 (M.D.Fla.2014)). Plaintiff's allegations certainly show it did not have full knowledge of the facts pertaining to the "fuel surcharge" and "environmental charge" when Plaintiff made those payments. Defendants' assertion—necessarily made in the Motion and Reply—that Plaintiff had knowledge of the facts cannot be resolved on a motion to dismiss.

## E. Federal Rules of Civil Procedure 8(a) and 9

Defendants assert the Amended Complaint fails to satisfy the requirements of Federal Rule of Civil Procedure 8(a). (*See* Mot. 17–19). This argument is largely repetitive of the challenges Defendants raise to the sufficiency of Plaintiff's claims. As the Court has already found the FDUTPA and breach of contract claims sufficient, it does not address this point further.

Defendants last argue the FDUTPA claim fails to meet the heightened pleading requirements of Rule 9. (*See* Mot. 19). This argument, too, fails.

 The undersigned has previously stated:

> The requirements of Rule 9(b) do not apply to claims under the FDUTPA. "FDUTPA was enacted to provide remedies for conduct outside the reach of traditional common law torts such as fraud, and therefore, 'the plaintiff need not prove the elements of fraud to sustain an action under the statute.' " *Florida v. Tenet Healthcare Corp.*, 420 F.Supp.2d 1288, 1310 (S.D.Fla.2005) (quoting *Davis v. Powertel, Inc.*, 776 So.2d 971, 974 (Fla. 1st DCA 2000)). Because Rule 9(b) does not apply to FDUTPA claims, its requirements cannot serve as a basis to dismiss those claims.

*Galstaldi*, 637 F.Supp.2d at 1058; *see also Guerrero v. Target Corp.*, 889 F.Supp.2d 1348, 1354–55 & 1355 n. 5 (S.D.Fla.2012) (same); *U.S. Bank Nat. Ass'n v. Capparelli*, No. 13–80323–CIV, 2014 WL 2807648, at *5 (S.D.Fla. June 20, 2014) (finding Rule 9(b) did not apply to the FDUTPA claim, and stating, "[b]ecause the FDUPTA is a consumer and business protection statute that is remedial in nature, this Court is inclined to align with the courts that construe the FDUPTA liberally in favor of consumers." (alteration added; footnote

call number omitted)). Furthermore, "FDUTPA claims can be based on deceptive or unfair practices that do not involve fraud," *SIG, Inc. v. AT & T Dig. Life, Inc.*, 971 F.Supp.2d 1178, 1195 (S.D.Fla.2013), which is precisely the type of conduct Plaintiff addresses in the Amended Complaint. *Cf. Llado–Carreno v. Guidant Corp.*, No. 09–20971–CIV, 2011 WL 705403, at *5 & n. 11 (S.D.Fla. Feb. 22, 2011) (requiring FDUTPA claim to satisfy Rule 9(b) where plaintiff's claim, "not supported by any specific facts" and which did not even satisfy Rule 8(a), appeared to be that defendant committed fraud by committing deceptive and unlawful acts).

## IV. CONCLUSION

Defendants' Motion largely repeats the challenges made to Plaintiff's original Complaint, in many instances verbatim. The arguments fail this second time. Being fully advised, it is

**ORDERED AND ADJUDGED** that the Motion to Dismiss Amended Class Action Complaint [**ECF No. 58**], and Defendants' request for a hearing (*see* Reply 9), are **DENIED**.

**DONE AND ORDERED** in Miami, Florida this 26th day of July, 2016.