JOSE E. MARTINEZ, UNITED STATES DISTRICT JUDGE
THIS CAUSE came before the Court upon Defendants Dollar Thrifty Automotive Group, Inc. d/b/a Dollar Rent A Car, Dollar Rent A Car, Inc., and DTG Operations, Inc.'s (collectively "Dollar") Motion to Dismiss Plaintiff's Class Action Complaint for Breach of Contract, Breach of Implied Covenant of Good Faith and Fair Dealing, and Violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") [ECF No. 21]. Dollar, pursuant to Federal Rule of Civil Procedure 12(b)(6), seeks dismissal of all Plaintiff Marshall Maor's claims.
Specifically, Dollar presents several arguments in the motion: (1) Maor has not alleged a breach of a contract claim, because the contract terms do not require the toll administrative fee to be related to Dollar's underlying toll administrative costs; (2) the voluntary payment doctrine bars Maor's breach of contract claim; (3) Florida law does not recognize a claim for breach of implied covenant of good faith and fair dealing without a properly pleaded breach of contract claim; (4) Florida law does not recognize a claim for breach of implied covenant of good faith and fair dealing if the claimed covenant would vary the express terms of a contract; and (5) the FDUTPA claim fails because the fees were fully disclosed, and thus, neither deceptive nor unfair. [See id. ].
For the reasons explained below, this Court denies Dollar's Motion to Dismiss.
I. Background
This case arises out of Dollar Rent-A-Car's rental contract provision that provides for charging certain customers toll costs and an administrative fee per use of an electronic toll booth. [ECF No. 1].[1] In *1323 2008, Dollar implemented Electronic Toll Collection ("ETC") for its rental cars, allowing customers to use cashless toll systems. [See id. ¶ 2]. Dollar's standard rental contract contains an express term requiring customers who decline a toll package to pay for any electronic tolls incurred, plus an administrative fee of $15 per occurrence.[2] [See id. ¶¶ 2-3]. The specific provision states:
All toll fines (including the use of all cashless toll roads without the purchase of the toll By-pass option) are subject to an admin fee of $15 per violation/occurrence. You authorize us to release your billing/rental information to PlatePass, LLC and ATS Processing Services, LLC to process and bill to your credit card or billing account for the above-mentioned charges.
[Id. ¶ 3]. Dollar collects payment for these charges through a third party, and at the time of collection, the third party provides a Frequently Asked Questions document that describes why the customer was charged an administration fee: "[p]er your rental agreement, an administration fee was charged to cover the costs of processing your citation on behalf of the Rental Car Company." [See id. ¶¶ 3, 48]. Dollar's actual costs to process electronic toll collection are only a fraction of the administrative fees charged to customers, and Dollar's fees are three times that of the next most expensive competitor. [See id. ¶¶ 4, 8, 10, 37-38].
Plaintiff Marshall Maor is a citizen of New York. While travelling in Florida, Maor contracted with Dollar, declined a toll package, rented a vehicle, and used an electronic toll booth. [Id. ¶ 45]. Dollar subsequently sent Maor a "Dollar Rent A Car Toll Charge Notice[,]" instructing Maor that he was subject to a toll charge of $1.37 and an administrative fee of $15.00. [Id. ¶ 47]. Maor paid the fee. [Id. ¶ 50].
Maor brings this class action on behalf of himself and those similarly situated: "All Dollar customers who rented (or will rent) Dollar vehicles for pick up in Florida and who paid (or will pay) Dollar's $15 or $25 per toll administration fee commencing January 1, 2008." [Id. ¶ 51]. The Complaint contains three claims, all brought under Florida law. Maor alleges that Dollar breached the express terms of its contract with customers by charging an administrative fee "to cover the costs of processing" toll citations, while only using a fraction of the fee to cover such costs. [Id. ¶ 63]. Furthermore, Maor alleges that Dollar breached an implied covenant of good faith and fair dealing to which the contract was subject, because Dollar charged customers an administrative fee that was not based on covering the costs of processing toll citations. [Id. ¶¶ 71-72]. Finally, Maor alleges that Dollar misrepresented the nature and purpose of the administrative fee, deceiving customers to their detriment, such that the conduct was unconscionable, deceptive, or unfair and violated the FDUTPA. [Id. ¶¶ 67-68].
II. Motion to Dismiss
"When considering a motion to dismiss, all facts set forth in the plaintiff's complaint 'are to be accepted as true and the court limits its consideration to the pleadings and exhibits attached thereto.' " Grossman v. Nationsbank, N.A. , 225 F.3d 1228, 1231 (11th Cir. 2000) (quoting *1324 Lopez v. First Union Nat'l Bank of Fla. , 129 F.3d 1186, 1189 (11th Cir. 1997) ). " Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.' " Bell Atl. Corp. v. Twombly , 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (quoting Fed. R. Civ. P. 8 ; Conley v. Gibson , 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) ). Thus, a plaintiff is not required to make detailed factual allegations; however, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly , 550 U.S. at 555, 127 S.Ct. 1955. "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Ashcroft v. Iqbal , 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). "Factual allegations must be enough to raise a right to relief above the speculative level ... on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Twombly , 550 U.S. at 555, 127 S.Ct. 1955.
Maor's claims survive this Motion to Dismiss because Maor has plausibly pleaded the substantive elements of claims for breach of contract, breach of implied covenant of good faith and fair dealing, and a violation of FDUTPA. The Court determines that: (1) the contract terms allegedly define "administrative fee" as a cost assessed for a specific purpose to be passed through to a third party, which Dollar may have breached by failing to pass through the full cost; (2) notwithstanding that the voluntary payment doctrine is an affirmative defense generally inappropriate for resolution on a motion to dismiss, Maor did not know the facts of Dollar's administrative fee which he paid, and thus the doctrine does not apply; (3) because the breach of contract claim is sufficiently pled, the claim for breach of an implied covenant is permitted; (4) Maor's allegation that Dollar breached an implied covenant is about Dollar collecting more in toll administration fees than required to cover their costs, and not about varying express contract terms; and (5) Dollar's conduct, as alleged, was deceptive and unfair. The Court discusses each claim in turn.
A. Breach of Contract
Under Florida law, the elements of a breach of contract claim are: "(1) the existence of a contract; (2) a material breach of that contract; and (3) damages resulting from the breach." Vega v. T-Mobile USA, Inc. , 564 F.3d 1256, 1272 (11th Cir. 2009) (citing Friedman v. N.Y. Life Ins. Co. , 985 So.2d 56, 58 (Fla. 4th DCA 2008) ). In determining whether there has been a breach of contract, "where the language of a contract is unambiguous and not subject to conflicting inferences, construction of the contract is a question of law for the court." Tulepan v. Roberts , No. 14-cv-80574, 2015 WL 235441, at *14 (S.D. Fla. Jan. 16, 2015) (applying Florida law).
Where a contract fully and unambiguously discloses a fee, certain courts have held that there can be no breach. See, e.g., Sallee v. Dollar Thrifty Automative Grp., Inc. , No. 14-CV-250-GKF-PJC, 2015 WL 1281518, at *6 (N.D. Okla. Mar. 20, 2015).[3]
*1325 In Sallee , the plaintiffs used an electronic toll lane four times without purchasing Dollar's toll bypass option, and subsequently alleged that Dollar breached the standardized rental contract by charging an administrative fee relating to each of the tolls incurred that purportedly exceeded Dollar's actual administrative costs. Id. at *1. The court held that Dollar's conduct fully complied with the terms of the contract and therefore there could not be a breach:
Plaintiffs in this case rejected the toll by-pass option and agreed to the terms of the toll fee provision which was clearly disclosed and explained in the rental agreement. Plaintiffs recognize they were charged precisely the amount they agreed to under the contract.
Even under the facts as alleged by plaintiffs, Dollar fully disclosed and explained the toll fee provision to which plaintiffs voluntarily agreed. Dollar's conduct was strictly compliant with the terms of the contract, and there was no breach. The court accordingly dismisses plaintiffs' claims for breach of contract.
Id. at *6. Similarly, in Ramon v. Budget Rent-A-Car System, Inc. , the plaintiff asserted a breach of contract claim because the overall vehicle rental cost was higher than expressed in the rental contract due to an additional refueling service charge. No. CIV.A.06-1905( ), 2007 WL 604795, at *4 (D.N.J. Feb. 20, 2007). The refueling service charge was "clearly identified and explained" within the contract. Id. Accordingly, the court held that the plaintiff was "charged the precise amount he agreed to under the contract" and that this could not "possibly amount to a breach." Id.
However, if a fee is described in a contract as for a specific purpose or based on actual costs, then not using the fee for that purpose or basing it on those costs could constitute a breach. See Deere Constr., LLC v. Cemex Constr. Materials Florida, LLC , 198 F.Supp.3d 1332, 1341 (S.D. Fla. 2016) ; Bowe v. Pub. Storage , No. 1:14-CV-21559-UU, 2014 WL 12029270, slip op. at *4 (S.D. Fla. July 2, 2014) ; see also Costa v. Kerzner Int'l Resorts, Inc. , No. 11-60663, 2011 WL 2519244, at *4 (S.D. Fla. 2011) (discussing that the plaintiff's claim for breach of contract would have survived a motion to dismiss if the plaintiff alleged that the " 'mandatory housekeeping gratuity and utility service fee' went to neither the housekeeping staff nor to pay the utility service fee"). In Deere , the plaintiff brought a breach of contract claim on the basis that, while the contract represented that "fuel surcharges" would be based on underlying fuel prices, the defendant, in fact, did not base fuel surcharges on fuel prices. 198 F.Supp.3d at 1341. The Court held these allegations were sufficient to survive a motion to dismiss. Id. at 1342. In Bowe , the defendants argued that they were simply complying with the terms of a rental agreement in charging for insurance as disclosed in the contract. 2014 WL 12029270 at *3. However, the Court decided that a claim for breach of contract was adequately pled because plaintiffs alleged that the contract identified "insurance charges as pass-through charges not retained by [Defendant,]" and "that Defendant breached those provisions by failing to pass-through the full amount that Plaintiff paid for insurance." Id. at *4-5.
While the existence of a contract is not in dispute, this case appears to turn on what Dollar means by an "administrative fee" within its contractual relationship with customers. Dollar argues that it is simply a $15 fee per toll occurrence, as stated by the purportedly unambiguous language of the rental contract, and that the contract does not restrict how Dollar may put that administrative fee to use or specify on what the fee is based. If this encapsulated Maor's allegations, then this case would be like Sallee or Ramon : there can be no *1326 breach where the defendant charged the plaintiff "the precise amount he agreed to under the contract." See Ramon , 2007 WL 604795 at *4 ; see also Sallee , 2015 WL 1281518 at *6. But Maor goes further, alleging that during their contractual relationship, Dollar, in collecting this administrative fee, sent him a document that describes the administrative fee "per your rental agreement" charged to "cover the costs" of processing tolls.[4] [See ECF No. 1, ¶¶ 3, 48]. The parties dispute the meaning of the contract terms, specifically whether Dollar had an obligation to pay all toll administrative fees to "cover the costs" of toll processing. In fact, Dollar disputes that the additional document referred to by Maor is part of the contract at all. However, to decide whether the additional document is part and parcel of the contract or to decide the meaning of the disputed terms at this preliminary stage would entail a factual inquiry more appropriate at a further stage of the proceedings.
As alleged, the administrative fee appears to be charged to pass through underlying toll administration costs from Dollar to its customers. By collecting more than necessary to pay these costs, and by not passing those amounts on to the toll processing company, Maor alleges that Dollar breached the existing contract. This claim is analogous to those claims made in Deere and Bowe , where courts denied motions to dismiss because the complaints alleged the breach of a contract term imposing costs on customers that were labeled for specific purposes or based on specific costs. See Deere , 198 F.Supp.3d at 1341 ; Bowe , 2014 WL 12029270 at *4.
Dollar also argues that the breach of contract claim should be dismissed, because the voluntary payment doctrine bars a claim for breach of contract if a party makes a voluntary payment "with knowledge of the facts" of the payment. See City of Miami v. Keton , 115 So.2d 547, 551 (Fla. 1959). However, "the voluntary payment doctrine is an affirmative defense that may not be raised on a motion to dismiss, as it entails a fact-based inquiry not suited for resolution on a Rule 12(b)(6) motion." See Deere , 198 F.Supp.3d at 1342 (citing Schojan v. Papa John's Int'l Inc. , 34 F.Supp.3d 1206, 1210-11 (M.D. Fla. 2014) ); U.S. v. Cayman Vill. Condo. Ass'n, Inc. , No. 12-61797-Civ., 2013 WL 1665846 at *1 (S.D. Fla. Apr. 17, 2013) ("[T]he issue of voluntary payment often entails a fact-based inquiry and is not suited for resolution at the dismissal stage.") (citing Pacific Mut. Life Ins. Co. of Cal. v. McCaskill , 126 Fla. 82, 170 So. 579, 583 (1936) ). But see Sanchez v. Time Warner. Inc. , No. 98-211-CIV-T-26A, 1998 WL 834345 (M.D. Fla. Nov. 4, 1998) (dismissing a breach of contract claim because the complaint contained factual allegations as to what facts the plaintiff knew at the time of his voluntary payment, supporting application of the voluntary payment doctrine).
Even if the Court decided that the voluntary payment doctrine should be considered at this preliminary stage, the Complaint does not contain allegations to support the doctrine. Maor alleges that-at *1327 the time of his voluntary payment of the administrative fee-he did not know that the fee was mostly retained by Dollar as profit, instead of being used to cover the costs of toll processing, because those facts were "secret" and "undisclosed." [See ECF No. 1 ¶¶ 41, 63]. Therefore, dismissal of Plaintiff's breach of contract claim is not warranted at this time.
B. Breach of an Implied Covenant of Good Faith and Fair Dealing
A claim for a breach of the covenant of good faith and fair dealing must be dismissed when such a claim "cannot be maintained under Florida law in the absence of a breach of an express term of a contract." Centurion Air Cargo, Inc. v. UPS Co. , 420 F.3d 1146, 1152 (11th Cir. 2005) (citing Cox v. CSX Intermodal, Inc. , 732 So.2d 1092, 1097 (Fla. 1st DCA 1999) ). As noted previously, Maor has sufficiently pleaded a breach of contract claim. See supra Part II.A. Accordingly, he may maintain his claim for breach of an implied covenant of good faith and fair dealing.
Dollar argues that the implied covenant claim should be dismissed because "the implied covenant of good faith ... is a gap-filling default rule which comes into play when a question is not resolved by the terms of the contract or when one party has the power to make a discretionary decision without defined standards." Speedway Super America, LLC v. Tropic Enters., Inc. , 966 So.2d 1, 3 (Fla. 2d DCA 2007) (internal quotation marks omitted). Furthermore, "the implied covenant of good faith should not be invoked to override the express terms of the agreement between the parties." Insurance Concepts & Design, Inc. v. Healthplan Services. Inc. , 785 So.2d 1232, 1234 (Fla. 4th DCA 2001).
In this case, Maor alleged that Dollar's contract terms notified him that he would be charged a $15 administrative fee per toll occurrence, but also stated that the administrative fee was charged to cover the costs of toll processing. These terms exist in some tension with one another: does Dollar charge $15 per occurrence, regardless of the underlying toll administration costs, or does Dollar limit its collection of fees to that necessary to "cover" its toll administration costs, which would be the reasonable expectation of Dollar's customers? This tension between contract terms creates a gap that the implied covenant of good faith and fair dealing is intended to fill. See Speedway , 966 So.2d at 3.
Taking all the allegations in the Complaint as true, as this Court is required to do, Dollar appears to have had discretion and thus a potential duty of good faith and fair dealing within the execution of the contract to only collect the administrative costs it incurred; as such, by collecting more than necessary to "cover" those costs, Dollar may have breached the implied covenant of good faith and fair dealing. Thus, Dollar's arguments seeking dismissal of the implied covenant claim, at this stage of the proceedings, are unavailing.
C. Violations of the FDUTPA
The FDUTPA prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.204(1). To state a FDUTPA claim, a plaintiff must allege "(1) a deceptive act or unfair trade practice; (2) causation; and (3) actual damages." Dolphin LLC v. WCI Cmtys., Inc. , 715 F.3d 1243, 1250 (11th Cir. 2013) (citing Rollins, Inc. v. Butland , 951 So.2d 860, 869 (Fla. 2d DCA 2006) ). Deception occurs "if there is a representation, omission, or practice that is likely to mislead the consumer acting reasonably in the circumstances, to the consumer's detriment."
*1328 Zlotnick v. Premier Sales Group, Inc. , 480 F.3d 1281, 1284 (11th Cir. 2007) (quoting PNR, Inc. v. Beacon Prop. Mgmt., Inc. , 842 So.2d 773, 777 (Fla. 2003) ). This standard "requires a showing of 'probable, not possible, deception' that is 'likely to cause injury to a reasonable relying consumer.' " Id. (quoting Millennium Commc'ns & Fulfillment, Inc. v. Office of the Att'y Gen. , 761 So.2d 1256, 1263 (Fla. 3d DCA 2000) ). An unfair practice is "one that offends established public policy and ... [one that] is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." Hetrick v. Ideal Image Dev. Corp. , 372 Fed.Appx. 985, 992 (11th Cir. 2010) (quoting Samuels v. King Motor Co. of Fort Lauderdale , 782 So.2d 489, 499 (Fla. 4th DCA 2001) ).
Courts have held that charges that are purported to be pass-through charges for specific expenses, but are in fact profit generating fees disguised as costs, are violations of the FDUTPA. In Latman v. Costa Cruise Lines , 758 So.2d 699 (Fla. Dist. Ct. App. 2000), Costa's cruise tickets disclosed a total price, which included the cruise price plus port charges. Id. at 701. Although the separate prices were disclosed, port charges were not defined. Plaintiffs claimed " 'port charges' necessarily inform[ed] the consumer that these [were] 'pass-through' charges paid by the cruise line to the relevant port authorities," and that by keeping a part of this charge, Costa had violated the FDUTPA:
Plaintiffs allege, and for present purposes it is accepted as true, that in fact the cruise lines passed through only a portion of the port charges to third parties, and kept the remainder for themselves. Plaintiffs alleged that this practice-collecting port charges but keeping a part of the port charges for their own account-amounted to an unfair and deceptive trade practice for purposes of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA").
Id. The court agreed, ruling that this was a deceptive practice because port charges "constitute[d] a representation to a reasonable consumer that these [were] 'pass-through' charges which the cruise line [would] pay to the relevant port authorities (and possibly others)." Id. at 703. See also Costa v. Kerzner Int'l Resorts, Inc. , No. 11-60663, 2011 WL 2519244, at *4 (S.D. Fla. 2011) (FDUTPA claim alleged where defendant kept some of the fees purportedly for third parties).
The court added that "[r]eliance and damages [were] sufficiently shown by the fact that the passenger parted with money for what should have been a 'pass-through' port charge, but the cruise line kept the money." Latman , 758 So.2d at 703. The court also explained that the relevant inquiry is how a reasonable consumer would interpret the term "port charge." Id. The court reasoned that "the term necessarily constitute[d] a representation to a reasonable consumer that these [were] 'pass-through' charges which the cruise line [would] pay to the relevant port authority." Id.
Dollar argues that the contract terms are not deceptive nor unfair largely because the $15 administrative fee is plainly disclosed in the document signed by customers at the time of rental. Because Dollar merely collected the disclosed fee, it argues that it cannot be violating the FDUTPA in abiding by the express terms of the agreement. See Indulgence Yacht Charters, Ltd. v. Ardell Inc. , No. 08-60739, 2008 WL 4346749, at *7 (S.D. Fla. Sept. 16, 2008) ("Courts routinely dismiss FDUTPA claims where those claims are directly and fully rebutted by express evidence in a governing written contract."); see also Circeo-Loudon v. Green Tree Servicing, LLC , No. 14-civ-21384, 2015 WL 1914798, at *4 (S.D. Fla. Apr. 27, 2015) (noting that "the performance of a contract *1329 in accordance with the terms of the agreement cannot constitute an unfair or deceptive act").
Again, Maor does not dispute that Dollar disclosed a $15 administrative fee per toll occurrence. But Maor also alleges that Dollar described this fee as charged to him to "cover" the costs of toll administration, and then further alleges that Dollar's costs of toll administration are only a small fraction of the fees charged to him by Dollar. Dollar was thus purportedly profiting from a fee described as a pass-through charge to cover toll administration expenses, a fact that Dollar kept secret from customers. Maor therefore alleges a deceptive practice that damages consumers by charging them more than necessary under the guise of a pass-through cost for a specific purpose. Such a practice, if true, could be viewed as "immoral, unethical, oppressive, unscrupulous [and] substantially injurious to customers." See Samuels , 782 So.2d at 499. Dollar's arguments that the Court should dismiss the FTDUPA claim thus fail.
III. Conclusion
Maor has adequately alleged claims for breach of contract, breach of implied covenant of good faith and fair dealing, and violation of the FTDUPA. As such, it is hereby:
ORDERED AND ADJUDGED that
1. Defendants' Motion to Dismiss Plaintiff's Class Action Complaint is DENIED [ECF No. 21]. Defendants shall file an answer to Plaintiff's Class Action Complaint on or before August 4, 2017 .
2. Any other presently pending motions are DENIED AS MOOT .
3. The Clerk is directed to LIFT the STAY in this matter. The Court shall reset all unexpired pre-trial deadlines and the trial date by separate order.
DONE AND ORDERED in Chambers at Miami, Florida, this 18 day of July, 2017.

"In evaluating the sufficiency of a complaint, a court 'must accept the well pleaded facts as true and resolve them in the light most favorable to the plaintiff.' " Beck v. Deloitte & Touche , 144 F.3d 732, 735 (11th Cir. 1998) (quoting St. Joseph's Hosp., Inc. v. Hosp. Corp. of Am. , 795 F.2d 948, 954 (11th Cir. 1986).

This administrative fee was $25 per occurrence until sometime in 2011. [ECF No. 1 ¶ 2 n.1].

The Court reviewed Salling v. Budget Rent-A-Car Sys., Inc. , No. 09-cv-2160, 2010 WL 2803081 (N.D. Ohio July 14, 2010), put forward as support by Dollar on this Motion to Dismiss. In addition to being non-binding on this Court, Salling involved a motion for summary judgment and its reasoning stemmed from a developed factual record and weighing competing interpretations of contract terms, considerations not appropriate on a motion to dismiss. Id. at *3-6.

In both Deere and Bowe , the courts considered explanations of contract terms from alleged parol evidence in determining whether to dismiss claims in those respective actions. See Deere , 198 F.Supp.3d at 1341 (referring to the defendant's website description of "fuel surcharges" as "cost recovery charges"); Bowe , 2014 WL 12029270 at *4 (recognizing that the complaint alleged provisions in "the Insurance Addendum that identify the insurance charges as pass-through charges that are not retained by [defendant]"). In the instant case, Maor has alleged that the document sent by Dollar defines the purpose of the administrative fee and that the document specifically relates to the rental contract central to this action. [See ECF No. 1, ¶¶ 3, 48].