ORDER ADOPTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION
JOSE E. MARTINEZ, UNITED STATES DISTRICT JUDGE
THIS MATTER was referred to the Honorable Jonathan Goodman, United States Magistrate Judge, for a Report and Recommendation on Defendant's Motion to Dismiss Plaintiff's Class Action Complaint [ECF No. 21]. Magistrate Judge Goodman filed a Report and Recommendation [ECF No. 55], recommending that this Court deny Defendant's Motion to Dismiss, except for Count III and Count IV, which should be dismissed without prejudice with leave to amend. This Court has reviewed the entire file and record and notes that no objections have been filed. After careful consideration, it is hereby:
ADJUDGEDthat United States Magistrate Judge Goodman's Report and Recommendation [ECF No. 55] is AFFIRMEDand ADOPTED. Accordingly, it is:
ADJUDGEDthat
1. Defendant's Motion to Dismiss Plaintiff's Class Action Complaint [ECF No. 21] is GRANTED, in part, AND DENIED, in part,as set forth herein.
2. Counts I, II, and V shall proceed as pleaded.
3. Counts III and IV are DISMISSED WITHOUT PREJUDICE, with leave to amend.
4. Plaintiff may file an amended complaint for the sole purpose of properly pleading a unconscionability claim (Count III) and unjust enrichment claim (Count IV), curing the pleading deficiencies set forth in Magistrate Judge Goodman's Report and Recommendation [ECF No. 55 at 28-32]. Plaintiff may file an amended complaint on or before July 6, 2018.
DONE AND ORDERED in Chambers at Miami, Florida, this 20 day of June, 2018.
REPORT AND RECOMMENDATIONS ON DEFENDANT'S MOTION TO DISMISS
Jonathan Goodman, UNITED STATES MAGISTRATE JUDGE
In 1963-1969 and again in 1975, NBC, and then CBS, broadcasted a popular and *1354 well-watched television game show called "You Don't Say!" That show used the tagline, "It's not what you say that counts, it's what you DON'T say."[1] In this case, evaluating both what was said and what was not said -- but that helped create a net impression -- is an approach used to assess Defendant CubeSmart's motion to dismiss a putative class-action lawsuit targeting the wording of a storage-rental unit insurance contract.
Plaintiff Jerry Lee Coleman rented storage space from CubeSmart and also purchased self-storage insurance from an insurer (Great American) whose policy CubeSmart made available to its customers. Coleman alleges in his Class Action Complaint that CubeSmart collected a hidden commission each time a customer purchased a storage-insurance policy from a specific third-party insurance company. Coleman labels CubeSmart's practice deceptive and unconscionable. At bottom, Coleman's theory is that CubeSmart dupes customers into believing (1) that it is keeping a portion of the insurance premiums it collects to cover only the expense of processing and remitting the remaining portion of the payments to the insurance carrier, and (2) that it does not retain any portion of the premiums for profit beyond the reimbursement of pure expenses.
The documents at issue, however, do not contain the words "only" or "remaining," nor do they expressly represent that CubeSmart's portion is limited only to reimburse expenses. Coleman alleges that CubeSmart's "cut of the premium far exceeds the amount necessary to cover its 'expense' in serving as collection agent." [ECF No. 1, p. 2 ¶ 8]. Indeed, he alleges that "CubeSmart generates substantial revenues and profits from its customers' purchases of [the insurance carrier] policies." Id. He adds that "CubeSmart identifies this income [in financial reporting documents] as 'customer insurance commissions' " and that "[t]hese commissions serve as a hidden profit center for CubeSmart." [ECF No. 1, pp. 2-3 ¶ 8].
Because the contract and related documents do not say everything that Coleman alleges is deceptive, he theorizes that the words said and not said create a net impression of deception. For example, Coleman alleges that "CubeSmart misled and deceived its customers by claiming that it only collected a portion of the premium sufficient to cover its expenses when, in fact, it collected 'commissions' that served as a significant profit center for CubeSmart." [ECF No. 1, p. 12 ¶ 61 (emphasis added) ]. But, as noted, the documents do not contain the word "only."
CubeSmart argues that it had no duty to disclose to its customers that it would earn a profit when they brought Great American's insurance. And it emphasizes Coleman's concession that a portion of his insurance premium did cover CubeSmart's expenses.
Plaintiff raised five counts: (1) violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") (Count I); (2) breach of contract (Count II); (3) unconscionability (Count III); (4) unjust enrichment (Count IV); and (5) breach of the implied covenant of good faith and fair dealing (Count V). [ECF No. 1]. CubeSmart's motion to dismiss challenges all counts. [ECF No. 21]. Coleman filed a *1355 response, and CubeSmart filed a reply. [ECF Nos. 29; 36]. United States District Judge Jose E. Martinez granted Coleman's motion to refer the motion to dismiss to me for a Report and Recommendations. [ECF Nos. 42; 45]. The Undersigned granted Coleman's motion for oral argument and held a hearing on April 18, 2018. [ECF Nos. 47; 51; 53]
For the reasons outlined below, the Undersigned respectfully recommends that Judge Martinez dismiss without prejudice the unjust-enrichment claim and unconscionability claim, but not all other counts.
Coleman might not ultimately be able to certify a class, and he might not later survive a summary judgment motion either. But for now, for purposes of a threshold motion to dismiss, most of the Class Action Complaint survives (and he will be permitted to file an Amended Complaint to cure the deficiencies that plagued two of the counts.).
I. Factual and Procedural Background
Because this Report addresses a motion to dismiss, the Undersigned will deem all well-pled allegations to be true. The Complaint alleges the following scenario:
CubeSmart's core business is the rental of storage space to customers. CubeSmart is not an insurer and is not registered as such in the State of Florida. CubeSmart is not engaged in the sale of insurance.
If a customer wants to rent storage space at a CubeSmart location, then he or she must execute a rental agreement. CubeSmart's rental agreements are standardized, and the company uses the same standard rental agreement nationwide.
CubeSmart's rental agreement requires customers to maintain insurance on the contents of their storage unit. This insurance must be sufficient to cover the full replacement value of the property the customer is storing in the unit. Specifically, the rental agreement states that the customer "WILL MAINTAIN INSURANCE FOR THE FULL REPLACEMENT VALUE OF THE CUBE CONTENTS." [ECF No. 1, p. 4 ¶ 20]. In the rental agreement, CubeSmart also expressly represents that it does not insure the contents of storage units, stating that "OWNER DOES NOT INSURE THE CUBE CONTENTS." [ECF No. 1, p. 5 ¶ 21].
CubeSmart makes available the "Great American Stored Property Insurance Program" to its customers. [ECF No. 1, p. 5 ¶ 22]. This "program" is an insurance policy underwritten by the Great American Assurance Company. The Great American policy is the only policy that CubeSmart makes available to its customers.
The Great American policy was offered at three coverage levels: (1) $2,000 of coverage for $12 per month; (2) $3,000 of coverage for $17 per month; and (3) $5,000 of coverage for $27 per month.
Every time a customer elects to buy a Great American insurance policy, CubeSmart receives a share of the monthly insurance premium paid by the customer. In the insurance participation form completed by customers who purchase the Great American policy, CubeSmart represents that a "portion" of the insurance premium is covering CubeSmart's "expense" in serving as a collection agent for the third-party insurance company. [ECF No. 1, p. 5 ¶ 25].
But in its own securities filings, CubeSmart has characterized the income from this "portion" of the insurance premium as "customer insurance commissions ." [ECF No. 1, p. 5 ¶ 26 (emphasis added) ]. CubeSmart's *1356 share of these insurance premiums generates substantial revenues and profits for the company. In CubeSmart's Form 10-K for the 2015 fiscal year, the company reported taking in $45.2 million in non-rental revenue, including "customer insurance commissions." [ECF No. 1, p. 5 ¶ 27]. The 2015 non-rental revenue was a $5.1 million increase from the 2014 fiscal year. CubeSmart attributed part of this $5.1 million increase in revenue to "increased insurance penetration." [ECF No. 1, p. 6 ¶ 27].
CubeSmart's reliance on the Great American insurance policy as a profit driver was expressly envisioned by the policy's administrator, City Securities Insurance, LLC. In a press release announcing the launch of the Great American Stored Property Insurance Program, City Securities noted that "storage operators" would receive "a revenue boost to the bottom line." [ECF No. 1, p. 6 ¶ 28].
Although CubeSmart profits from the sale of Great American policies to its customers, the company expressly deceives its customers about its financial interest. CubeSmart portrays itself to its customers as a mere collection agent with no financial stake in the sale of insurance. In Section f of the rental agreement, which is titled "Insurance," CubeSmart represents that "[a]ny insurance premium ... is being collected for a third party insurance provider pursuant to a separate agreement." [ECF No. 1, p. 6 ¶ 29 (emphasis added) ].
Great American's insurance participation form reinforces CubeSmart's characterization that it serves as a disinterested collection agent. The form states that a "portion" of the insurance premium will cover CubeSmart's "expense" for serving as a collection agent. [ECF No. 1, p. 6 ¶ 30]. It also says: "I understand a portion of the cost I pay is applicable to the storage company's expense in collecting, accounting, and remitting payment to the Insurance Company." Id.
But CubeSmart recoups more than just the "expense" it incurs in serving as a collection agent for Great American. It profits from the sale of Great American policies but conceals that fact from its customers.
On September 10, 2016, Coleman rented self-storage space at CubeSmart store 0857, located in Sanford, Florida. Consistent with the insurance requirement found in his CubeSmart rental agreement, Coleman purchased $2,000 of coverage for $12 per month. Since then, CubeSmart has charged Coleman $12 per month.
CubeSmart has never disclosed to Coleman, or any of the class members, the true nature of its relationship with Great American or City Securities. Specifically, CubeSmart has not disclosed that it profits from the sale of these policies. The disclosure that a portion of the premium goes to reimburse CubeSmart for alleged expenses is not a reference to a profit ; it is information about only a reimbursement.
As noted in CubeSmart's motion to dismiss, Coleman had the choice to obtain the insurance from any source, including through his own homeowner's policy, and he was not required to use the insurance carrier that CubeSmart offered or suggested. In addition, he does not allege that the insurance he purchased was inadequate, that Great American was not permitted to charge $12 per month, that CubeSmart was not allowed to charge $12 per month for the renter's insurance, that the insurance coverage was defective in some way, that the monthly price was changed after he agreed to pay it, or that *1357 he did not receive insurance that cost him exactly $12 per month. Moreover, Coleman does not allege that he could have obtained similar insurance for less money, nor does he allege that he would have avoided the Great American policy had he known that CubeSmart was keeping some of the premium as additional profit.
Given these circumstances, CubeSmart takes the position that Coleman "got exactly what he bargained for" and that it had no duty to Coleman to not make a profit on the insurance policy. [ECF No. 21, p. 3].
Coleman's counter-argument is that he is not claiming that CubeSmart had a duty to disclose its profit. Instead, his view is that once CubeSmart decided to make representations (even though it was under no duty to do so), it could not do so deceptively. The following exchange with his counsel from the motion-to-dismiss hearing illustrates his position:
THE COURT: ... So let me just ask the Plaintiff, just sort of [an] introductory question. If CUBESMART had never said anything at all about the premium and simply said here's the cost. No comments about whether it was for expenses. Whether a portion was for expenses. Whether it was passing on the expense to another insurance company. Whether it was serving as a collection agent.
And I know that this particular contract or form did not say exactly those things, but if CUBESMART had not said any of those things and it just said here's an opportunity to buy insurance, period, would you still have a claim ?
MR. BYRNE: No , Your Honor.
I don't believe we would and I think that's the Berry[2] case where they were pretty clear in the order. It was a Judge Cohn opinion that in Berry they said here's the cost. I forgot what the number was, but it cost this much. Full stop. Period.
And the Court said that is not deceptive. They represented what they were collecting. And the problem here and the distinction here is that CUBESMART didn't say that.
...
THE COURT: ... Am I correct that at no part or in no part of this case are you advocating a theory that CUBESMART had some sort of an affirmative duty to disclose to the customers that it was earning a commission, a profit, or revenue from the insurance premiums?
MR. BYRNE: Well, Your Honor, they certainly had a duty in this instance because of what they said.
Now, had they not said what they said and made the representations that they made both in the rental contract and in the insurance form --
THE COURT: So I think there is a little bit of a different response. I think what you are basically saying is -- and if I am putting words in your mouth you tell me, but I think what your argument is, look, we did not have a duty -- I mean, CUBESMART did not have a duty to say anything either way. But, once it decided to say something, then it had to be accurate and not deceptive.
MR. BYRNE: One hundred percent .
[ECF No. 54, pp. 4-5, 6-7 (emphasis added) ].
*1358 During the hearing, CubeSmart represented that there was no need to discuss further the defense argument that there was no affirmative duty to disclose a profit because Coleman unequivocally represented on the record that his Complaint is not based on that theory. [ECF No. 54, pp. 9-10]. Thus, CubeSmart's argument underlying its dismissal motion shifted focus at the hearing based on Coleman's concession. At bottom, CubeSmart now contends that (1) the analysis is not a Latman -type[3] "pass-through" case where there was a representation that a portion would flow to CubeSmart for expenses, and (2) the representation in the insurance form cannot generate grounds for a breach-of-contract case against CubeSmart because it is not a party to that form and because it was not an actual representation, but an acknowledgement by Coleman.
Coleman affirmed his position and further noted his contention that his claims are encompassed by the Latman rule later in the hearing:
THE COURT: So let me just follow up with the Plaintiff here.
Let's just say that this language said instead -- I'm reading from the same document: I understand a portion of the cost I pay will be paid to the storage company, period. That is it. Period.
Any problem with that?
MR. BYRNE: No, Your Honor, and that's the fundamental difference.
THE COURT: So, really, this is a case where under your theory CUBESMART is in difficulty and has exposed itself to liability by including too much information.
That is the rub. They said too much because if they had kept it simple, then, there would not be any deception, according to you, right?
MR. BYRNE: One hundred percent.
And they misled the consumer and they misled the consumer for a reason. And there's a motive because if the consumer understands that CUBESMART has some financial interest in this product they might start to ask questions.
But CUBESMART is representing to the consumer, hey, consumer, we're just helping you pay the insurer. And we are keeping a portion to cover our expense and we're not making any money off this product. We're just breaking even here. And the consumer says, wow, this guy is looking out for my best interest. Well, actually, no, they're making significant money off of this.
And one thing that I have to take issue with, this is a pass-through case. Make no question about it. You have a situation where you have CUBESMART representing to the consumer that they're taking the premium. They're keeping a portion to cover their expenses. The net impression being left that's the only portion that they are keeping and they are passing the rest through to the insurer.
In fact, they are not passing the rest through to the insurer. They are keeping significant portions over and above their expenses so they can make money off that product. They are not passing that profit through and that profit is the damages that we have in this case.
THE COURT: Similarly, if this language had laid it all out and said I *1359 understand a portion of the cost I pay will go to the storage company's expenses and for additional revenue and profit , then, that would be acceptable as well?
MR. BYRNE: Yes.
THE COURT: So they would have been okay if they had said nothing , correct?
MR. BYRNE: Correct.
THE COURT: They would have been okay if they said less , correct?
MR. BYRNE: Correct.
THE COURT: They would have been okay if they said more if the more had been complete and accurate ?
MR. BYRNE: Yes.
THE COURT: But they fell into this midrange of saying some, but not all . And by saying some[,] that generated a misleading impression on the consumer.
MR. BYRNE: It's the net impression test.
[ECF No. 54, pp. 19-21 (emphasis added) ].
II. Legal Standard
When considering a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), the Court must accept all the complaint's allegations as true, construing them in the light most favorable to the plaintiff. Pielage v. McConnell , 516 F.3d 1282, 1284 (11th Cir. 2008). A pleading need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[T]he pleading standard Rule 8 announces does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-has-unlawfully-harmed-me accusation." Ashcroft v. Iqbal , 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quotation omitted). A plaintiff must articulate "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly , 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).
"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal , 556 U.S. at 678, 129 S.Ct. 1937. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. Thus, a pleading that offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" will not survive dismissal. See Twombly , 550 U.S. at 555, 127 S.Ct. 1955. " Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." Iqbal , 556 U.S. at 679, 129 S.Ct. 1937.
III. Analysis
A. Standing
Standing is a threshold issue that must be resolved before any other argument. Church v. Accretive Health, Inc. , 654 F. App'x. 990, 992 (11th Cir. 2016) ("standing is a jurisdictional threshold question which must be addressed prior to and independent of the merits of a party's claims.") (quoting DiMaio v. Democratic Nat. Comm. , 520 F.3d 1299, 1301 (11th Cir. 2008). To have standing, a "plaintiff *1360 must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." Spokeo, Inc. v. Robins , --- U.S. ----, 136 S.Ct. 1540, 1547, 194 L.Ed.2d 635 (2016). An injury in fact is " 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.' " Id. at 1548.
Here, CubeSmart argues that Coleman has failed to allege a cognizable injury. It says that Coleman sustained no injury because he obtained what he bargained for: a $12-per-month renter's insurance contract. The Undersigned disagrees.
Coleman has adequately alleged an injury-in-fact because he seeks to recover the portion of his premium that CubeSmart kept despite representing that it would keep only a portion to reimburse expenses. See Deere Constr., LLC v. Cemex Constr. Materials Fla., LLC , 198 F.Supp.3d 1332, 1340 (S.D. Fla. 2016) (rejecting standing challenge, reasoning: "Plaintiff clearly alleges an injury in fact: the payment of fees it seeks to recover with its prayer for the repayment of the fees plus interest"); Morgan v. Pub. Storage , No. 1:14-CV-21559-UU, 2015 WL 11233111, at *2 (S.D. Fla. Aug. 17, 2015) (rejecting standing challenge, because "measure of actual damages ... is the amount retained by defendant despite the representation that the amount will be transferred to a third-party"); Latman , 758 So.2d at 703 ("damages are sufficiently shown by the fact that the passenger parted with money for what should have been a 'pass-through' port charge, but the cruise line kept the money").
Moreover, Coleman sufficiently alleged that his injury is fairly traceable to CubeSmart's challenged conduct. This is a "relatively modest" burden, Bennett v. Spear , 520 U.S. 154, 171, 117 S.Ct. 1154, 137 L.Ed.2d 281 (1997), and "even harms that flow indirectly from the action in question can be said to be 'fairly traceable' to that action for standing purposes." Focus on the Family v. Pinellas Suncoast Transit Auth. , 344 F.3d 1263, 1273 (11th Cir. 2003) ; see Lexmark Int'l, Inc. v. Static Control Components, Inc. , 572 U.S. 118, 134 S.Ct. 1377, 1391 n.6, 188 L.Ed.2d 392 (2014) ("Proximate causation is not a requirement of Article III standing, which requires only that the plaintiff's injury be fairly traceable to the defendant's conduct.").
In this case, Coleman's injury is fairly traceable to CubeSmart's conduct because one may reasonably infer that Coleman would not have been damaged but for the representations (both express and implied) about the renter's insurance, which a reasonable consumer could interpret as a pass-through charge (or partial pass-through charge). Latman , 758 So.2d at 703 (explaining that "the inquiry is how a reasonable consumer would interpret the term 'port charges,' " and concluding that the "term necessarily constitutes a representation to a reasonable consumer that these are 'pass-through' charges which the cruise line will pay to the relevant port authorities (and possibly others)"). "Finally, a favorable decision on the claim will redress the injury to the extent Plaintiff recovers the monies it paid on the basis of deceptive representations and omissions." Deere Constr. , 198 F.Supp.3d at 1340.
Thus, Coleman has standing. This conclusion, of course, is based only on his allegations. If it turns out that his critical allegations and fundamental theory are incorrect, then Coleman may not have standing *1361 (or he may be on the losing side of a summary judgment motion). And a fact-finder might reject as illogical the inference Coleman says is reasonable under a net-impression view. But for purposes of a motion to dismiss, the Undersigned finds the alleged injury plausible.
B. FDUTPA
A FDUTPA claim requires: "(1) a deceptive act or unfair practice; (2) causation; and (3) actual damages." Carriuolo v. Gen. Motors Co. , 823 F.3d 977, 983 (11th Cir. 2016). "To satisfy the first element, the plaintiff must show that 'the alleged practice was likely to deceive a consumer acting reasonably in the same circumstances.' " Id. at 983-84 (citations omitted).
Because "an objective test is employed in determining whether the practice was likely to deceive a consumer acting reasonably," a plaintiff "need not show actual reliance on the representation or omission at issue." Id. at 984. So the burden is unlike (and less than) the burden a claimant pursuing a fraud claim must meet. Because to prove fraud under Florida law, a plaintiff must establish, among other things, "reliance on the representation to the injury of the other party." Nyesa Costa Rica v. Wilson Capital Grp. Holdings, LLC , No. 11-22036-CIV, 2012 WL 1492344, at *3 (S.D. Fla. Apr. 27, 2012) (emphasis added) (internal citation omitted).
"In determining whether a representation is likely to mislead consumers acting reasonably, courts consider the net impression created." F.T.C. v. RCA Credit Servs., LLC , 727 F.Supp.2d 1320, 1329 (M.D. Fla. 2010) (emphasis added). If the statements are "likely to mislead reasonable consumers," then it makes no difference if the statements are "technically or literally true." F.T.C. v. Peoples Credit First, LLC , 244 F. App'x 942, 944 (11th Cir. 2007).[4] And how a reasonable consumer would interpret a term is an issue of fact. Jankus v. Edge Inv'rs, L.P. , 650 F.Supp.2d 1248, 1258 (S.D. Fla. 2009).
The Undersigned rejects CubeSmart's argument that Latman does not apply. Because there is no authoritative decision from the Florida Supreme Court, Latman is binding. Fid. Union Trust Co. v. Field , 311 U.S. 169, 177-78, 61 S.Ct. 176, 85 L.Ed. 109 (1940) ; Veale v. Citibank, F.S.B. , 85 F.3d 577, 580 (11th Cir. 1996). Several judges in this district have relied on Latman when denying dispositive motions aimed at claims analogous to Coleman's. Zamber v. Am. Airlines, Inc. , 282 F.Supp.3d 1289 (S.D. Fla. 2017) (Judge Martinez, adopting the Undersigned's Report and Recommendations on the defendant's motion to dismiss); Maor v. Dollar Thrifty Auto. Grp., Inc. , 303 F.Supp.3d 1320, 1328-29 (S.D. Fla. 2017) (Martinez, J.); Deere Constr. , 198 F.Supp.3d at 1338-40 (Altonaga, J.); Morgan , 2015 WL 11233111, at *1 (Ungaro, J.); Bowe v. Pub. Storage , No. 1:14-CV-21559-UU, 2014 WL 12029270, at *3 (S.D. Fla. July 2, 2014) ; Jankus , 650 F.Supp.2d at 1258 (Hurley, J.) (on summary judgment).
In Latman , the Third District Court of Appeal held that cruise lines engaged in a "deceptive" practice under FDUTPA when they itemized a portion of passengers' ticket fares as "port charges" even though the cruise lines paid only a portion of the charges to third parties and kept the remainder *1362 as profit. 758 So.2d at 701, 703 ("We therefore conclude that where the cruise line bills the passenger for port charges but keeps part of the money for itself, that is a deceptive practice under FDUTPA.").
Even though the term "pass-through" was not expressly included in the cruise lines' representations to the passengers , the Latman Court held that "the inquiry is how a reasonable consumer would interpret the term 'port charges,' " and "[t]he term necessarily constitutes a representation to a reasonable consumer that these are 'pass-through' charges which the cruise line will pay to the relevant port authorities (and possibly others)." Id. at 704. Indeed, the Court held that any "intentional overcharge" that a reasonable consumer would interpret as going to a third party rather than kept by the defendant itself -- even one that the consumers were willing to pay -- would be actionable under FDUTPA. Id. at 703.
Further, a FDUTPA plaintiff is not required "to identify any statements or representations by Defendants as to how the fees would be calculated in order to state a claim of deception or falsity." Deere Constr. , 198 F.Supp.3d at 1339. Rather, where a defendant "chose the descriptive terms and if they do not accurately describe what is being charged and collected, such conduct is actionable under the FDUTPA." Id.
Here, Coleman has sufficiently alleged that a consumer acting reasonably in the same circumstances would (or could) interpret the representations (in the Self-Storage Rental Agreement and the Personal Property Insurance Participation Form that CubeSmart gave to Coleman) to be that: (a) a third-party (i.e., not CubeSmart) sold the renter's insurance policies and (b) CubeSmart received only a "portion" of the premiums paid "applicable to the storage company's expense in collecting, accounting, and remitting payment to the Insurance Company." [ECF No. 1, p. 2 ¶ 6].
Although the documents do not expressly say that CubeSmart would be receiving only a portion of the premium for expenses, the representations could be interpreted to generate that net impression. By saying (accurately) that CubeSmart would receive an expense reimbursement but, like the contestants in the You Don't Say television show, remaining silent about also receiving an additional portion for a commission and extra profit, CubeSmart could leave a reasonable net impression that no other portion besides an expense reimbursement would be paid to it.
Bowe , which the Undersigned finds logical and persuasive, supports this conclusion. In that case, which was filed by the same law firm that represents Coleman here, the plaintiff's putative class action alleged that Public Storage, similar to CubeSmart, required its customers to insure the contents of their storage unit and then marketed and sold such insurance to its customer. 2014 WL 12029270, at *1. The plaintiff in Bowe alleged that Public Storage engaged in a "kickback scheme," where it "misrepresent[ed] and obscure[d] its relationship with the insurance providers," and thus "misleadingly induced Plaintiff into purchasing an overpriced insurance policy." 2014 WL 12029270, at *3.
Significantly, the additional standard-form addendum to Public Storage's rental agreement stated, in relevant part, that the customer authorizes Public Storage "to conduct the administrative function of receiving premium to send to the insurance *1363 company on my behalf." [Complaint, Bowe v. Public Storage , Case No. 14-vc-21559-UU (S.D. Fla. April 30, 2014), ECF No. 1, p. 3 ¶ 10]. Public Storage failed to disclose that it kept as a profit a large part of the premium that it purportedly sent to the insurance company. The Court held that the facts alleged stated a FDUTPA claim under Latman. Bowe , 2014 WL 12029270, at *3 ("Plaintiff alleges that instead of paying these fees to the insurance provider, Defendant retained a portion of these fees. This is adequate to state a claim under FDUTPA.").
Similarly, the Undersigned finds Maor persuasive. In that case, a car-rental company's rental contract explained that customers would be charged toll costs and an administrative fee per use of an electronic-toll booth. 303 F.Supp.3d at 1322-23. Its standard rental contract required customers who declined to buy an electronic-toll package to pay for any tolls incurred, plus an "administrative fee" of $15 per occurrence. Id. The car-rental customers were also given a document that "describe[d] the administrative fee 'per your rental agreement' charged to "cover the costs" of processing tolls." Id. at 1326. Plaintiff, however, alleged that the car-rental company's costs to process electronic-toll collection were only a fraction of the administrative fee, which was also three times that of the next most expensive competitor's fee. Id. at 1322-23.
The Maor Court rejected the defense's argument that the contract terms were not deceptive or unfair because the $15 administrative fee was plainly disclosed in the document. Id. at 1328-29. Instead, the Court agreed with the position that the defendant car-rental company described the fee as one designed to "cover" toll-administration costs, when the actual costs were only a small fraction of the fees charged to the customer. Id. Therefore, the Court concluded that the defendant was "purportedly profiting from a fee described as a pass-through charge to cover toll administration expenses, a fact that [the defendant] kept secret from customers." Id. Consequently, the Court denied the motion to dismiss the FDUTPA claim.
In Maor , given that the car-rental customers were advised that the fee was designed to cover the toll-administration costs, a reasonable customer could rationally conclude that only those actual costs were being charged (and not additional profit). Similarly, CubeSmart's customers were advised that a "portion" of the premium applies to CubeSmart's "expense" even though CubeSmart allegedly received far more money than the expense reimbursement.
Moreover, the Undersigned is unconvinced by CubeSmart's reliance on Berry and similar cases. The nature of the representations in those cases was different than the representations here. And the Complaint in this case includes allegations significantly absent from those in Berry and the other cases.
Specifically, the plaintiffs in Berry did not allege that the $3-per-day-cost-recovery fee ("CRF") added to the daily rental rate is "anything analogous to a pass-through charge, like a port fee or sales tax." 497 F.Supp.2d at 1367. To the contrary, the Court explained, the term "cost recovery fee" implied that the car-rental company "will keep the money collected as 'recovery' for its costs." Id.
To be sure, the Berry plaintiffs did allege that the CRF amount exceeded the actual cost of licensing and registration. Id. But the Court (Judge Cohn) explained *1364 that the car-rental company's website described the CRF's purpose as "recovery of licensing and registration fees for its fleet of vehicles," and then noted that the complaint did not allege that any of the plaintiffs even viewed the website. Id. at 1367 n.4.
CubeSmart also relies upon Costa v. Kerzner International Resorts, Inc. , No. 11-60663-CV, 2011 WL 2519244 (S.D. Fla. June 23, 2011), another Judge Cohn case in which he dismissed a FDUTPA claim where the resort allegedly charged guests a "mandatory housekeeping gratuity" but did not pay all of the gratuity to housekeeping staff. Id. at *2. The ruling, however, was based on the specific language of the contract, which discussed two grounds for the fee. The applicable contract provided that "guests will be required to pay a mandatory housekeeping gratuity and utility service fee" of a certain fixed-dollar amount. Id. at *2 n.1 (underlining added). But the plaintiff's claim was premised on the notion that all the funds should go to the housekeeping staff even though the contract provided that the funds would be used to pay two items. Given this dynamic, the Court held that "Plaintiff, therefore, could not reasonably expect all of the Funds to be for a gratuity, and has fallen just short of stating a claim." Id. at *2. (emphasis added).
Critically, although the Kerzner Court dismissed the FDUTPA count, it rejected the defendants' argument that a deceptive practice could not be pled under the facts. Distinguishing the facts in Berry , the Court explained that "the 'cost recovery fee' in Berry implied that the company will keep the money collected," and "[t]hat practice was not deceptive because there were no allegations that the fee was analogous to a pass-through charge." Id. at *2 n.2. By contrast, in Kerzner , "[t]he use of the term 'gratuity' in the present action, as opposed to 'fee' or 'service charge,' would lead a reasonable consumer to believe that those funds are a pass-through to the housekeeping staff, just as the 'port charges' in Latman ." Id. But ultimately, because the plaintiff in Kerzner had "failed to allege that some of the Funds went to neither the housekeeping staff nor toward the utility service fee," the mere representation that some of the money was supposed to be for the housekeeping staff was not deceptive given that the hotel also disclosed that the money would also be paid for a second purpose: the utility service fee. Id. (emphasis added).
This type of pleading defect (arising from vague and imprecise allegations) is not present in this case.
Whether a reasonable consumer would interpret the representations here to mean that the insurance premium is a pass-through charge is thus a question of fact for a jury. Jankus , 650 F.Supp.2d at 1258 (finding an issue of material fact as to whether a reasonable consumer would interpret certain contractual language referencing insurance "to mean that at least a portion of [a] 'development fee' represented a 'pass through' charge"). In determining whether a representation is likely to mislead consumers acting reasonably, courts "consider the net impression created." RCA Credit Servs. , 727 F.Supp.2d at 1329 (explaining standard under Section 5(a) of the FTC Act, which prohibits "deceptive acts or practices in or affecting commerce").[5]
Here, Coleman adequately states a deceptive representation sufficient *1365 to satisfy the first element of a FDUTPA claim.[6] A consumer could reasonably conclude, based on both the express representations and what was not said, that CubeSmart would retain only the portion for its expenses, a conclusion that is factually incorrect under the allegations of the Complaint.
Coleman also adequately pleads causation and damages. Under FDUTPA, causation and damages are shown by the fact that Coleman parted with money for what should have been a portion of the pass-through charge, but was instead kept by CubeSmart. Latman , 758 So.2d at 703 (damages where "passenger parted with money for what should have been a 'pass-through' port charge, but the cruise line kept the money"); see also Morgan , 2015 WL 11233111, at *2 (explaining that the measure of damages was the "amount retained by defendant despite the representation that the amount will be transferred to a third-party"); Bowe v. Pub. Storage , 106 F.Supp.3d 1252, 1270 (S.D. Fla. 2015) (explaining that "analogous to the port charges in Latman , the full amount of the access fees would then be an appropriate measure of FDUTPA damages"); Turner , 885 So.2d at 1008 (explaining that "an appropriate measure of damages [in FDUTPA case] is the undisclosed profit").
The Undersigned readily acknowledges that the documents here do not use the actual words "pass-through" charge. But the term "pass-through" charges were not used in the Latman documents either. The term "pass-through" was merely how the Latman plaintiffs and that Court described the port charges that were paid by the cruise line to the relevant port authorities. The plaintiffs alleged that the practice of collecting port charges but keeping a part of the port charges for the cruise ship's own account was an unfair and deceptive trade practice. Similarly, Coleman's Complaint explains that the portion of the premium CubeSmart collected but then retained in excess of its expenses is concealed. The mere fact that documents explained that CubeSmart received a "portion" of the premium does not render the statement not deceptive merely because a portion did in fact go for expenses. A permissible interpretation is that only the portion for expenses was retained.
Furthermore, CubeSmart has not called attention to any authority which holds that a deceptive pass-through, similar to the one in the seminal Latman case, must be a complete pass-through. If a defendant, like CubeSmart, represents that it will keep a portion of funds, then the net impression could be that the remaining portion is a pass-through to the recipient insurance carrier. But if some of that remainder is not passed through because it actually and secretly is retained by the defendant, like *1366 Coleman alleges CubeSmart did, then the pass-through dilemma is still present.
In short, Coleman has adequately alleged a FDUTPA claim.
C. Breach of Contract
CubeSmart contends that it cannot be liable under a breach-of-contract theory because (1) the alleged breach stems not from the rental agreement but from another document: an insurance form; (2) the form does not obligate CubeSmart to do anything, but simply contains an acknowledgement of the customer's understanding that CubeSmart retained a portion of the premiums to pay for expenses; (3) CubeSmart is not a party to the form, so it cannot be liable for its breach; and (4) CubeSmart actually did retain a portion for fees, just like the form says. The Undersigned, however, is not convinced by CubeSmart's arguments, at least not at the motion-to-dismiss stage.
First, Coleman does not need the insurance form to adequately allege a breach of contract claim because CubeSmart's rental agreement states that "[a]ny insurance premium shown ... is being collected for a third party insurance provider." [ECF No. 1-1, p. 3]. As succinctly explained in Maor , "if a fee is described in a contract as for a specific purpose or based on actual costs, then not using the fee for that purpose or basing it on those costs would constitute a breach." 303 F.Supp.3d at 1325. Thus, having stated in the rental agreement that the premium is being collected for a third party, keeping a portion of that premium instead could constitute a breach of contract.
Second, even if the viability of Coleman's breach-of-contract claim depended on the applicability of the insurance form, "to decide whether the additional document is part and parcel of the contract or to decide the meaning of the disputed terms at this preliminary stage would entail a factual inquiry more appropriate at a further stage of the proceedings." Id. at 1326.
Third, at this stage, Coleman has alleged facts which could establish that the insurance form is not actually separate from the rental agreement. For instance, CubeSmart seemingly presented the form as part of the rental agreement, requiring its customers, regardless of whether they purchased the insurance that CubeSmart offered, to sign and submit the insurance form to rent a storage space.
Fourth, even if CubeSmart's argument about Coleman's acknowledgment is legally correct, which the Undersigned is not prepared to adopt at this early stage, the rental agreement itself does not contain the "I understand" acknowledgment.
In sum, Coleman has adequately alleged a breach-of-contract claim.
D. Covenant of Good Faith and Fair Dealing
CubeSmart contends that the Complaint does not state a claim for breach of the implied covenant of good faith and fair dealing because the theory depends on the breach of an express contract provision. And CubeSmart argues that Coleman has not established a breach of an express contract term.
But as explained above, Coleman has alleged a permissible breach-of-contract claim. Moreover, the implied covenant of good faith and fair dealing is intended to fill the "gap" created when contract terms are in "some tension" with *1367 one another and generate a reasonable expectation in the minds of the company's customers. Maor , 303 F.Supp.3d at 1327-28 ; see also Bowe , 2014 WL 12029270, at *4 (allowing implied-covenant claim to stand).
As such, Coleman has stated a claim for breach of the implied covenant of good faith and fair dealing.
E. Unjust Enrichment
As Coleman correctly states in his opposition response, he is permitted to plead an unjust enrichment claim in the alternative, which would normally mean that dismissal of that claim based solely on the existence of a contract or potential for an adequate remedy at law would be premature and inappropriate. See Aceto Corp. v. TherapeuticsMD, Inc. , 953 F.Supp.2d 1269, 1287 (S.D. Fla. 2013) ("While the theory of unjust enrichment is equitable in nature and is, therefore, not available where there is an adequate legal remedy, a plaintiff may maintain an unjust enrichment claim in the alternative to its legal claims."); see also Martorella v. Deutsche Bank Nat. Tr. Co. , 931 F.Supp.2d 1218, 1228 (S.D. Fla. 2013) ("Until an express contract is proven, a motion to dismiss a claim for unjust enrichment on these grounds is premature."); Intercoastal Realty, Inc. v. Tracy , 706 F.Supp.2d 1325, 1332 (S.D. Fla. 2010) ("nothing prevents Plaintiff from pursuing alternative claims of breach of contract and unjust enrichment in separate counts.").
But while Coleman now says (in a memorandum opposing the dismissal motion) that he has pled an unjust enrichment claim in the alternative [ECF No. 29, p. 18], his Complaint is not so clear. Count IV does not say that it is pled in the alternative or that it seeks alternative relief. [ECF No. 1, p. 15]. Count IV is further based on the same predicate common facts underlying the other counts. And Coleman cannot amend his Complaint by way of an opposition response. Therefore, Coleman has failed to adequately plead an unjust-enrichment claim. See Weaver v. Mateer & Harbert, P.A. , No. 5:09-CV-514-OC-34TBS, 2012 WL 3065362, at *11 (M.D. Fla. July 27, 2012), aff'd, 523 F. App'x 565 (11th Cir. 2013) ("[T]he Court recognizes that breach of contract and unjust enrichment claims may be pled in the alternative. However, although Plaintiff may be entitled to plead in the alternative, that is not what Plaintiff has done in this case. Plaintiff's unjust enrichment claim relies on the factual predicate common to all its claims.") (internal citations omitted).
In addition, "because [Coleman's] complaint also alleges that a valid contract exists," he "must allege that no adequate remedy at law exists within [his] unjust enrichment claim." Begualg Inv. Mgmt. Inc. v. Four Seasons Hotel Ltd. , No. 10-22153-CIV, 2011 WL 4434891, at *7 (S.D. Fla. Sept. 23, 2011). Coleman has not alleged (in the alternative or otherwise) that he lacks an adequate remedy at law, even though he does allege that a contract exists.
Therefore, the District Court should dismiss without prejudice Coleman's claim for unjust enrichment, with leave to amend.
F. Unconscionability
Coleman alleges that "CubeSmart's policies and practices with regard to selling self-storage insurance are or were substantively and procedurally unconscionable[.]" [ECF No. 1, p. 14 ¶ 73]. However, *1368 and this is the significant point, he does not seek an order that the contract or policies not be enforced. Instead, he seeks damages.
The Court in Williams v. Wells Fargo Bank N.A. , No. 11-21233-CIV, 2011 WL 4368980 (S.D. Fla. Sept. 19, 2011), has provided the following succinct summary of the elements for an unconscionability claim:
To succeed on an unconscionability claim, [plaintiffs] must demonstrate both procedural and substantive unconscionability. Procedural unconscionability relates to the manner in which a contract is made and involves consideration of issues such as the bargaining power of the parties and their ability to know and understand the disputed contract terms. Substantive unconscionability ... requires an assessment of whether the contract terms are so outrageously unfair as to shock the judicial conscience.
Id. at *7 (internal citations and quotations omitted).
Although Florida law is "somewhat unclear" about whether unconscionability is a cause of action, "what is clear, is that even where courts have recognized a cause of action for unconscionability, they have held that money damages are not recoverable as a remedy for such a claim. Id. (citing Cowin Equip. Co. v. Gen. Motors Corp. , 734 F.2d 1581, 1582 (11th Cir. 1984) ("The Court finds that neither the common law of Florida, nor that of any other state, empowers a court addressing allegations of unconscionability to do more than refuse enforcement of the unconscionable section or sections of the contract so as to avoid an unconscionable result.") ).
In Count III, although the Complaint cryptically and quickly mentions that the contract provisions are unenforceable, it does not seek relief concerning the alleged unenforceability. Instead, it seeks damages, which is precisely the type of relief that this Court cannot provide under an unconscionability theory. Moreover, the Complaint also alleges in other sections that the Rental Agreement is legally "valid and enforceable." [ECF No. 1, pp. 13, 16 ¶¶ 69, 82].
Therefore, the Court should dismiss this one count. See Sherwin-Williams Co. v. Auto Body Tech, Inc. , No. 12-23362-CIV, 2014 WL 2177961, at *7 (S.D. Fla. May 26, 2014) (explaining that "the equitable theory of unconscionability has never been utilized to allow for the affirmative recovery of money damages") (internal quotation omitted); see also First Class Coach & Equip., Inc. v. Thomas Built Buses, Inc. , No. 6:05CV969ORL31JGG, 2006 WL 269983, at *7 (M.D. Fla. Feb. 3, 2006), aff'd , 209 F. App'x 922 (11th Cir. 2006) (rejecting unconscionability argument because plaintiff cannot contend that "contract is unconscionable," yet "seek[ ] damages for its breach").[7]
*1369 In short, the District Court should dismiss without prejudice Coleman's unconscionability claim, with leave to amend.
IV. Conclusion
The crux of the Complaint is that CubeSmart made certain representations to Coleman (and other storage-rental-space customers) that, when combined with omissions, generated a net impression that was incorrect and misleading. Thus, to invoke the once-famous television game show referenced at the start of this Report, Coleman and the putative class members[8] should be, for all claims except two, be permitted for now to proceed under, at least in part, the "You Don't Say" approach.
Therefore, the Undersigned recommends that the District Court deny CubeSmart's motion to dismiss, except for the unconscionability claim (Count III) and unjust enrichment claim (Count IV), which should be dismissed without prejudice .
V. Objections
The parties will have 14 days from the date of being served with a copy of this Report and Recommendations within which to file written objections, if any, with the District Court. Each party may file a response to the other party's objection within 14 days of the objection. Failure to file objections timely shall bar the parties from a de novo determination by the District Court of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report except upon grounds of plain error if necessary in the interest of justice. See 28 U.S.C. § 636(b)(1) ; Thomas v. Arn , 474 U.S. 140, 149, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985) ; Henley v. Johnson , 885 F.2d 790, 794 (1989) ; 11th Cir. R. 3-1 (2016).
RESPECTFULLY RECOMMENDED in Chambers, in Miami, Florida, on May 31, 2018.

You Don't Say , IMDB, https://www.imdb.com/title/tt0057802/ (last visited May 31, 2018).

Berry v. Budget Rent A Car Sys., Inc. , 497 F.Supp.2d 1361 (S.D. Fla. 2007) (granting motion to dismiss FDUTPA claim because the challenged language was not deceptive).

Latman v. Costa Cruise Lines, N.V. , 758 So.2d 699 (Fla. 3d DCA 2000). Latman is the seminal Florida state-law case discussing pass-through charges and whether the representations are deceptive under FDUTPA.

Under FDUTPA, "Florida courts must give 'due consideration and great weight' " to FTC cases. Nelson v. Mead Johnson Nutrition Co. , 270 F.R.D. 689, 692 (S.D. Fla. 2010).

Florida courts must give "due consideration and great weight" to FTC and federal court interpretations of section 5(a)(1) of the FTC Act, 15 U.S.C. § 45(a)(1). Nelson v. Mead Johnson Nutrition Co. , 270 F.R.D. 689, 692 (S.D. Fla. 2010) (evaluating FDUTPA claim).

Even if Coleman had not adequately pled a deceptive representation, he would still alternatively state a claim based on a deceptive omission (i.e., what CubeSmart failed to say in the documents delivered to Coleman). FDUTPA applies to both representations and omissions. Carriuolo , 823 F.3d at 984 (stating that plaintiff "need not show actual reliance on the representation or omission at issue") (emphasis added); Turner Greenberg Assocs. v. Pathman , 885 So.2d 1004, 1006 n.1, 1009 (Fla. 4th DCA 2004) (affirming class certification expressly based on "failure to disclose" FDUTPA theory). A jury could find that the omission of CubeSmart's alleged profit interest is deceptive because it requires customers to purchase insurance and facilitates the Great American policy by making it available at the time the customer signs the rental agreement.

In his opposition response, Coleman argues that "unconscionability [is] an independent cause of action" under Florida law. [ECF No. 29, p. 18]. But the Florida Supreme Court and the cases Coleman relies on make clear that this type of "claim" can only be asserted to "prevent the enforcement" of an unconscionable section of a contract. Basulto v. Hialeah Auto. , 141 So.3d 1145, 1157 (Fla. 2014) ("Unconscionability is a common law doctrine that courts have used to prevent the enforcement of contractual provisions[.]"); see also Steinhardt v. Rudolph , 422 So.2d 884, 890 (Fla. 3d DCA 1982) (holding that unconscionability claim may exist only "against the enforceability of such leases"). Coleman does not seek, as a remedy, a declaration that any contractual provision is unconscionable. For this reason alone, the so-called unconscionability "claim" should be dismissed. See, e.g., Williams , 2011 WL 4368980, at *8.
At the oral argument, Coleman's counsel advised, in response to a question from the Undersigned, that he "can't think of one" case authorizing an independent claim for unconscionability to provide damages. [ECF No. 54, pp. 61-62].

Assuming that Judge Martinez adopts this Report and a class is certified.